IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEANNA L. ENTINGHE, | ) | CASE NO. 3:10 CV 1438 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Deanna L. Entinghe, for disability insurance benefits and supplemental security income.[1]  The parties have consented to magistrate judge's jurisdiction.[2]

The matter is before me on a motion for summary judgment with supporting brief and chart filed by Entinghe,[3] which has been opposed by the Commissioner.[4]  The parties have participated in oral argument on this motion.[5]

---

[1] ECF # 1.

[2] ECF # 8.

[3] ECF # 21.

[4] ECF # 22; *see also*, ECF # 19 (Commissioner's brief on the merits); ECF # 22 (Commissioner's reply brief).

[5] ECF # 25.

For the reasons set forth below, Entinghe's motion will be granted insofar as it seeks a remand to an Administrative Law Judge for further proceedings consistent with this opinion.

## Facts

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Entinghe had severe impairments consisting of cervical and lumbar spine sprain/strain/degenerative disease, myofascial pain syndrome, left rotator tendonitis with history of successful left shoulder surgery, and, per her report, history of tachycardia with pacemaker implantation.[6]  The ALJ made the following finding regarding Entinghe's residual functional capacity:

> The claimant has the current residual functional capacity (RFC) to perform sedentary work with no lifting of greater than ten pounds.  On June 30, 1999, the date that she was last insured, she was able to perform at least light exertional work.[7]

Based on that residual functional capacity, the ALJ found Entinghe capable of her past relevant work and, therefore, not under a disability.[8]

Entinghe asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Entinghe argues that the ALJ:

---

[6] Transcript ("Tr.") at 21.

[7] *Id.* at 18.

[8] *Id.*

-2-

(1)     failed to properly consider the opinions of her treating physicians in formulating the RFC;[9]

(2)     failed to obtain the opinions of a medical expert before determining her RFC;[10]

(3)     did not support her credibility finding with substantial evidence;[11]

(4)     did  not have substantial evidence for determining that Entinghe could make adjustments to work;[12] and

(5)     erred in concluding that Entinghe engaged in substantial employment for certain years.[13]

For the reasons that follow, I will conclude that the ALJ's findings are not supported by substantial evidence and, therefore, the matter must be remanded.

## Analysis

This case spans a 10-year time period and involves an unusually extensive record of nearly 700 pages.  Moreover, as will be discussed below, the ALJ's opinion while complicated, is not well articulated.  As will also be discussed, the case will need to be remanded so that the opinion can conform with the treating physician rule.

---

[9] ECF # 21 at 8-10.

[10] *Id*. at 10-11.

[11] *Id*. at 11-14.

[12] *Id*. at 14-15.

[13] *Id*. at 15-16.

Entinghe applied for both disability insurance benefits and supplemental security income.  The alleged onset date for disabilities was May 31, 1998,[14] and Entinghe's insured status expired on June 30, 1999.[15]

As of June 30, 1999, the ALJ found that Entinghe was capable of light work.[16]  With that finding, the ALJ concluded that Entinghe was not disabled during this time period because, on the testimony of  a vocational expert (VE), she was able to perform her past relevant work as a restaurant manager.[17]

During this period Entinghe's treating physicians were mostly Albert C. Clairmont, M.D., an assistant professor-clinical of physical medicine and rehabilitation at the Ohio State University Medical Center in Columbus, Ohio,[18] and W.J. Downhour, D.O., a family practice physician in Lima, Ohio.[19]

---

[14] Tr. at 14.

[15] *Id*. at 15.  Essentially, the period when Entinghe was insured constitutes the claim for disability insurance benefits, while the time from July 1, 1999, forward is the subject of the claim for supplemental security income.

[16] *Id*. at 18.

[17] *Id*. at 20.

[18] *Id.* at 367, 368, 370-72, 374.

[19] *Id*. at 556-563.

After July 1, 1999, Entinghe continued to be treated by Dr. Downhour as her family physician,[20] and also by Dr. Clairmont.[21] In 2006, Dr. Downhour completed an RFC.[22]  But, Enginghe added several new, significant treating physicians.  From 2001 to 2004, Cheng-Te Lin, M.D., a neurosurgeon, treated Entinghe initially with morphine for pain and then by implanting and maintaining a spinal cord stimulator.[23]  Dr. Lin completed numerous RFCs during this period.[24]  In 2005 Dr. Nicholas Boulis, a neurosurgeon at the Cleveland Clinic, determined that the spinal cord stimulation was largely unsuccessful and noted the symptoms were more consistent with fibromyalgia.[25]  Dr. Boulis did not complete an RFC.

In addition, the ALJ found that between 2005 and 2007 Entinghe was employed virtually full time at a mobile home park collecting rent.[26]

Thus, on this record, the ALJ made the RFC determination quoted earlier.  In so doing, she also noted that the RFC assessments of Dr. Downhour and Dr. Lin were "more restrictive" than that adopted by the ALJ.[27]  In addition, in discounting the opinions of

---

[20] *Id*. at 290-94.

[21] *Id*. at 378-81.

[22] *Id*. at 290-94.

[23] *Id*. at 157, 161, 169, 175, 182, 201, 272, 274-76.

[24] *Id*. at 411, 409, 408, 404-05, 402.

[25] *Id*. at 458, 462, 465, 467-69.

[26] *Id*. at 15.

[27] *Id*. at 19.

Drs. Downhour and Lin, the ALJ did not identify either of these physicians as treating sources and further did not specifically ascribe any particular weight to their opinions. Rather, she rejected those RFC findings in two brief sentences as being inconsistent with the objective medical evidence and as relying on Entinghe's subjective complaints, which the ALJ found to be not entirely credible.[28]

As noted, Entinghe raises the issue that the ALJ did not properly consider the opinions of her treating physicians by rejecting those opinions in the manner she did.[29]  The Commissioner, for his part, contends that the ALJ reasonably rejected the opinions of these acknowledged treating physicians.[30]  But, it is telling to note that the Commissioner tacitly accepts Entinghe's view that the ALJ did not adequately articulate her reasons for discounting these opinions.  In fact, the Commissioner states that the ALJ rejected these opinions after she "reasonably surmised" the basis for Dr. Downhour's opinion[31] and "reasonably surmised"[32] the grounds for Dr. Lin's opinion.

The treating physician rule is now well established.  Specifically, the regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[28] *Id*.

[29] ECF # 21 at 8-10.

[30] ECF # 17 at 19-20.

[31] *Id*. at 19.

[32] *Id*. at 20.

> Generally, we give more weight to opinions from your treating sources, since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[33]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[34]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[35] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[36]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[37] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[38] nevertheless, it must be "well-supported by medically acceptable

---

[33] 20 C.F.R. § 404.1527(d)(2).

[34] *Id.*

[35] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[36] *Id.*

[37] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[38] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[39]  In deciding if such

supporting evidence exists, the Court will review the administrative record as a whole and

may rely on evidence not cited by the ALJ.[40]

    In *Wilson v. Commissioner of Social Security*,[41] the Sixth Circuit discussed the treating

source rule in the regulations with particular emphasis on the requirement that the agency

"give good reasons" for not affording controlling weight to a treating physician's opinion in

the context of a disability determination.[42]  The court noted that the regulation expressly

contains a "good reasons" requirement.[43]  The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[44]

---

[39] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[40] *Id.* at 535.

[41] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[42] *Id.* at 544.

[43] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[44] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[45]  It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[46]  The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[47]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[48]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured.  First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[49]  Second, the ALJ must identify for the record evidence supporting that finding."[50]  Third, the ALJ must determine what weight, if any, to

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Wilson*, 378 F.3d at 546.

[50] *Id.*

give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[51]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52]  The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53]  In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

---

[51] *Id.*

[52] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[53] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[54] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

---

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

[61] *Id.* at 409.

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the

---

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id*. at 409-10.

[66] *Id*. at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

Accordingly, this is not a situation where the Commissioner, after the fact, can search the record for unarticulated grounds that it can then "surmise" might have been the basis for the ALJ's decision.  Conjectures and surmises do not constitute substantial evidence in support of a decision not to accord due weight to the opinions of treating sources.  Rather, the ALJ must actually identify and articulate those grounds in the opinion.

As applies in this case, the Sixth Circuit explicitly teaches that in articulating good reasons for assigning less than controlling weight, the ALJ may not merely stop with the first of the preceding three factors and simply state that the opinion of the treating source differs from the opinion of a non-treating source, or that objective medical evidence does not support the opinion of the treating source.[69]  Rather, as also applies here, the Sixth Circuit has said that the rejection or discounting of a treating source opinion without assigning weight to that opinion is grounds for a remand.[70]

On remand, I note that resolution of the articulation problem described above may well result in the same result being obtained, particularly as it concerns the ALJ's findings for the years 2005-2006 and for the 1999-2005 time period.  But, as much as the record contains numerous grounds for independently concluding that the ALJ's findings in these

---

[68] *Id.* at 940.

[69] *Friend*, 375 F. App'x at 552.

[70] *Blakley*, 581 F.3d at 408.

-13-

respects are likely correct, I cannot now affirm these findings.  These elements of the record were not carefully discussed in connection with an explicit acknowledgment of Drs. Downhour's and Lin's status as treating sources and then as part of clearly articulated reasons for not giving weight to their opinions.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Entinghe had no disability.  Accordingly, the matter is remanded for further proceedings consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[71] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated:  March 16, 2012                          s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

---

[71] 28 U.S.C. § 2412(d)(1)(A).

-14-